RECEIVED

NOV 3 0 2005

ROBERT ... CLERK
WESTERN ... LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **SHARON LYNETTE ROUCHON** | **CIVIL ACTION NO. 05-0290** |
| VS. | JUDGE MELANÇON |
| **JO ANNE BARNHART, Commissioner**<br>**Social Security Administration** | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

### *Background*

Born on August 8, 1959, Sharon Rouchon ("Rouchon") is 46 years old. Rouchon completed the tenth grade, obtained a GED and completed a Certified Nursing Assistant ("CNA") course.[1] Rouchon worked in the past as a stocker, cook, and dishwasher.[2] On August 11, 2003, Rouchon applied for disability benefits and supplemental security income, alleging disability since November 13, 2002 due to Hepatitis C, Type II diabetes mellitus, major depression without psychosis, generalized anxiety disorder, and sickle cell trait.[3] Rouchon's application was denied on initial review, and an administrative hearing was held on August 26, 2004.[4] In an opinion dated November 9, 2004, the ALJ determined that Rouchon is not disabled

---

[1] Tr. 177.

[2] Tr. 64.

[3] Tr. 37-39, 51.

[4] Tr. 168-215.

because she is be able to return to her past work.[5] The Appeals Council denied review and Rouchon timely filed this appeal.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

    1.    If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

---

[5] Tr. 14-20.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[6]

---

[6] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

    1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
    2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
    3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
    4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild,"

In the instant case, the ALJ determined that Rouchon's Hepatitis C, Type II diabetes mellitus, major depression without psychosis, generalized anxiety disorder, and sickle cell trait are severe impairments.[7] The ALJ assessed Rouchon's residual functional capacity ("RFC") and concluded that Rouchon could perform all exertional levels of medium work. After consulting a vocational expert, the ALJ concluded that Rouchon could perform her past work.

*Assignment of Errors*

Rouchon alleges the following grounds for appeal: 1) the ALJ erred in identifying her past relevant work; 2) the ALJ erred in the residual functional capacity assessment; and 3) the ALJ's hypothetical question to the vocational expert was erroneous.

*Findings and Conclusion*

1. **Administrative Record**

*Physical impairments:* Rouchon has been treated at University Medical Center ("UMC") and Teche Action Clinic for Hepatitis C, sickle cell trait, and diabetes mellitus. In March, 2003, Rouchon underwent a liver biopsy which showed moderate chronic Hepatitis C, but she was advised that she could continue with normal activity.[8] Rouchon's Hepatitis C is treated with the prescription medication Pegasys and Copegus.[9] The sickle cell trait is stable.[10] Her diabetes is treated with insulin, but, the record shows that she has "poor compliance" with the medical

---

and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[7] Tr. 19.

[8] Tr. 92-93.

[9] Tr. 80, 138.

[10] Tr. 80.

regimen.[11] On October 23, 2002, the Teche Action Clinic noted that Rouchon's diabetes was uncontrolled, that she had a history of poor compliance, but that she denied any complaints.[12] Except for one occasion when she complained of blurred vision, the records show that Rouchon did not complain often of pain, swelling, or serious fatigue associated with her Hepatitis C or diabetes, but rather sought routine follow-up visits for medication and treatment of these impairments.[13]

*Mental impairments*: Beginning in December, 1999, Rouchon was treated at St. Mary Mental Health by Dr. Ricahrd Kutner, a psychiatrist.[14] Rouchon described having difficulty sleeping and explained that she spent time thinking about her three children who drowned 15 years earlier.[15] Rouchon was diagnosed with major depression and generalized anxiety disorder and prescribed an anti-depressant.[16] On April 25, 2000, Dr. Kutner noted, "Doing well overall. There are no reported side effects from medication. Patient is taking medication as prescribed."[17] In August, 2004, Rouchon reported that she was sleeping better, but she sometimes slept during the day when she was alone.[18] Rouchon's thought processes, behavior, and insight were good.

---

[11] Tr. 83, 100, 102, 106, 113, 114.

[12] Tr. 106.

[13] Tr. 100, 104-106, 109, 116.

[14] Tr. 167.

[15] Tr. 167.

[16] Tr. 165.

[17] Tr. 164.

[18] Tr. 153.

*Hearing testimony:* Rouchon testified that she had recently completed a home study course to become a Certified Nursing Assistance ("CNA").[19] Rouchon put her name on a will-call list for temporary work as a CNA, however, she had not been called.[20] Rouchon had recently worked temporarily as a cafeteria worker.[21] Rouchon testified that she takes care of her ill father and babysits her five-year old granddaughter.[22] She can lift between 25 and 50 pounds occasionally, and 15 pounds frequently.[23] She drives, grocery shops, cleans her house, and cuts the grass.[24] Rouchon stated that she cannot maintain employment because she has days where she cannot get out of bed due to pain.[25]

## 2. Past Work

Rouchon maintains that the ALJ erred when he concluded that her employment as a stock clerk, cook, and cafeteria worker constituted past relevant work. Rouchon contends that her earnings as a clerk at Wal-Mart, a stocker at Slim's and a cafeteria worker did not constitute substantial gainful activity.

"Past relevant work" is defined as follows:

Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.

---

[19] Tr. 177.

[20] Tr. 197.

[21] Tr. 184, 188.

[22] Tr. 179, 182.

[23] Tr. 206.

[24] Tr. 179, 180, 206, 207.

[25] Tr. 188, 192.

20 C.F.R. § 404.1560(b)(1).

In order to constitute substantial gainful activity, averaged monthly earnings from July, 1999 to December, 2000 must exceed 700.00. *See* 20 C.F.R. § 404.1574(b)(2)(i).

The record shows that in 2000, Rouchon had the following earnings:

Wal-Mart: $1893.47

Lily Garden: $358.83

American Orient Express Railway: $7182.15

In 2001, she earned $247.20 as a cafeteria worker. In 2002, she earned $3283.00 at Slim's Baldwin Self-Serve, Inc.[26]

In her application for benefits, Rouchon stated that she worked at Wal-Mart from August, 1999 to November, 1999; worked for three months in 1997 at Lily Garden; and worked for ten months at Slim's. The dates that Rouchon gave in her work history are not consistent with the earnings record. Since Rouchon was unsure about the years she worked, it is unclear whether her length of employment estimates are correct.

Regardless of whether or not the time worked at Lily Garden is correct, it is clear that her work there is not substantial gainful activity because even if she worked there only one month, it totaled only $358.83, which is less than the required $700.00. Likewise, her work as a cafeteria worker in 2001 only netted $247.20 in earnings and, thus, is not substantial gainful activity. It is unclear, however, whether her work at Wal-Mart and Slim's constitutes substantial gainful activity because there is no information regarding the length of her employment at those companies.

---

[26] Tr. 46-47.

The undersigned finds, however, that regardless of whether the ALJ erred in finding that Rouchon's work at Lilly Garden, Slim's, Wal-Mart, and as a cafeteria worker constituted "past relevant work" the record supports the ALJ's decision that Rouchon can return to her work as a cook. Rouchon does not dispute that her work as a cook at American Orient Express Railway is substantial gainful employment. Rouchon earned $7182.15 as a cook in 2000, the same year that she claims in her brief to have worked for four months at Wal-Mart. Assuming Rouchon worked for four months at Wal-Mart, the remaining eight months would have been at American Orient. Thus, her earnings as a cook would have averaged almost $900.00 per month, which is clearly substantial gainful employment. Accordingly, the undersigned finds that the record supports that Rouchon has past relevant work as a cook.

3.  **Residual functional capacity assessment**

Rouchon argues that the ALJ's residual functional capacity assessment was erroneous because the evidence does not support that she can perform medium level work.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. <u>Perez v. Heckler</u>, 777 F.2d 298, 302 (5th Cir. 1985). Further, the ultimate issue of disability is reserved to the Commissioner. <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990).

Here, the ALJ weighed the medical evidence and Rouchon's testimony and determined that Rouchon retained the residual functional capacity to perform medium work. Medium work consists of lifting 25 to 30 pounds frequently and 50 pounds occasionally. 20 C.F.R. § 416.967(c). The ALJ concluded:

Claimant is able to assist in the care of her father and provide regular and continuing child care on an almost daily basis for her 5 year-old granddaughter. She shops, watches television, uses the phone, drives a vehicle, has a driver's license, and coordinates the medical care for her father. In these functional areas of activities of daily living, social functioning, and concentration, persistence, or pace, the evidence of record supports a determination that all of these functional areas are performed at an acceptable level compatible with the ability to engage in gainful activity, and that there are no marked limitations. There have been no episodes of decompensation. Finally, it is important to recognize that no treating source has concluded that the claimant is unable to sustain a work routine because of her impairments. A discharge summary from University Medical Center dated March 27, 2003, advised her to follow a normal diet and to engage in a normal level of activity.[27]

Rouchon claims that the "known and expected side effects" of Pegasys and Copegus medication are serious and include extreme fatigue, joint pain, fever, and mental problems. However, the ALJ correctly assessed Rouchon's condition and the *actual* side effects from her medication, which were minimal. Rouchon testified that she suffered from joint pain, fatigue, and headaches, but a 2004 report from UMC shows that she tolerates her medication well.[28]

Moreover, there are no medical records supporting Rouchon's contention that she has limitations which would preclude her from working or that she cannot engage in work on a sustained basis due to pain, depression, and medication. Rouchon's testimony shows that she can meet the physical demands of medium work, and her ability to engage in the daily up-keep of her home, her father's care, and babysitting her grandchild, show that she can meet the rigors of continuing employment.[29] Accordingly, the undersigned finds that substantial evidence of record supports the ALJ's determination that Rouchon can perform medium work.

---

[27] Tr. 18.

[28] Tr. 142.

[29] In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a realistic work setting. Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002).

4. **Hypothetical question to the vocational expert**

Rouchon argues that the ALJ erred in posing the hypothetical question to the vocational expert because the hypothetical did not state that Rouchon ha Hepatitis C, diabetes, depression, anxiety, and sickle cell trait.

In order to determine whether Rouchon could perform her past work, the ALJ consulted a vocational expert, Patricia Knight:

> Q. ...Let's assume, based on credible evidence before me, that the Claimant has demonstrated exertional impairments that would reflect a residual functional capacity for work on a sustained basis; for lifting and carrying occasionally between 20 and 50 pounds, frequently between 10 to 25 pounds. Would she be able to do any of her past relevant work?
>
> A. With those restrictions, she would be able to perform her past work, Your Honor.[30]

Although Rouchon argues that the ALJ did not consider all of her impairments, she fails to identify what limitations are posed by her impairments which are not included in the ALJ's hypothetical. The ALJ is only required to rely on the vocational expert's testimony in response to the hypothetical that includes the limitations *recognized by the ALJ* as being Rouchon's residual functional capacity. Bowling v. Shalala, 36 F.3d 431 (5th Cir. 1994). Thus, the ALJ was not required to mention the actual severe impairments, but rather only the limitations posed by the impairments. Accordingly, the hypothetical posed to the vocational expert included Rouchon's residual functional capacity as recognized by the ALJ. Accordingly, the undersigned

---

[30] Tr. 212-213.

concludes that substantial evidence of record supports the ALJ's reliance on the hypothetical posed to the vocational expert in determining that Rouchon was not disabled.[31]

### *Conclusion*

The court's function is to determine whether substantial evidence supports the ALJ's decision. As set forth above, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). Here, the medical evidence and Rouchon's daily activities support the ALJ's finding that Rouchon retained the residual functional capacity to perform medium work. Further, the testimony of the vocational expert supports the ALJ's determination that Rouchon can perform her past work as a cook, and is therefore, not disabled. The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

---

[31] Further, the ALJ was not required to consult a vocational expert to determine whether Rouchon could perform her past work as a cook. The ALJ noted that Rouchon had past work as a cook, that was performed by the claimant at medium level. Tr. 18. Thus, substantial evidence aside from the testimony of the vocational expert supports the ALJ's decision that Rouchon could perform her past work as a cook.

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See **Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on November 30, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

11-30-05
cd
mcm
TLM / PJ